### UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | **Chapter 11** |
| | ) | |
| **MID-CITY PARKING, INC.,** | ) | **Case No. 04 B 45177** |
| | ) | |
| | ) | **Hon. Jacqueline P. Cox** |
| Debtor. | ) | |

---

### STIPULATION AND INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 361 AND 363 (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION AND (III) SCHEDULING FINAL HEARING

Upon the Emergency Motion (the "*Motion*") dated December 8, 2004, filed by Mid-City

Parking, Inc. (the "*Debtor*") seeking the entry of an Interim Order (the "*Interim Order*"),

(a) authorizing, pursuant to Section 363(c) of the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq.

(the "*Bankruptcy Code*"), on an emergency and limited basis, use of cash and cash equivalents

constituting "*Cash Collateral*" (as that term is defined in Section 363(a) of the Bankruptcy

Code) in the ordinary course of business and pursuant to the Budget (as defined herein), and

(b) providing, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, adequate protection

to MB Financial Bank, N.A. (the "*Lender*"), as senior secured creditor, with respect to any

diminution in the value of the Lender's interest in the Collateral (as that term is defined below),

for the use of all Cash Collateral, the use, sale or lease of the Collateral (other than the Cash

Collateral) and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy

Code; (c) seeking a preliminary hearing (the "*Preliminary Hearing*") on the Motion to consider

entry of the Interim Order pursuant to Bankruptcy Rule 4001, and (d) requesting that a final

hearing (the "*Final Hearing*") be scheduled, and that notice procedures in respect of the Final

Hearing be established by this Court to consider entry of a final order authorizing on a final

basis, the use of the Cash Collateral; the Preliminary Hearing having been held before this Court;

due and sufficient notice of the Motion and the Preliminary Hearing under the circumstances

having been given; and upon the entire record made at the Preliminary Hearing, and this Court

having found good and sufficient cause appearing therefore

THE DEBTOR AND THE LENDER STIPULATE AND THE COURT FINDS AND

CONCLUDES THAT:

A.      On December 8, 2004 (the *"Petition Date"*), the Debtor filed a voluntary petition

for relief with this Court under Chapter 11 of the Bankruptcy Code (the *"Chapter 11 Case"*).

The Debtor is continuing in possession of its property and operating and managing its business

as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No

trustee, examiner, or official creditors' committee has been appointed in the Chapter 11 Case.

B.      Without prejudice to the rights of any other party (but subject to the limitations

thereon described in paragraph 28 below), the Debtor acknowledges and stipulates that, from

time to time prior to the Petition Date, the Lender loaned money to or for the benefit of the

Debtor, which loans were documented, recorded or evidenced by various agreements,

instruments, financing statements and documents, all as may have been amended, modified or

restated from time to time (collectively, the *"Prepetition Loan Agreements"*)[1].

C.      Without prejudice to the rights of any other party (but subject to the limitations

thereon described in paragraph 28 below), the Debtor acknowledges and stipulates that, in

accordance with the terms of the Prepetition Loan Agreements, the Debtor is truly and justly

indebted to the Lender, without defense, counterclaim or offset of any kind, and that, as of the

Petition Date, (i) the Debtor was liable to the Lender in respect of loans made by the Lender to

the Debtor pursuant to the Prepetition Loan Agreements in the aggregate principal amount of approximately $1,450,000.00 (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the Prepetition Loan Agreements, the Debtor was liable to the Lender for accrued and unpaid interest, attorneys' fees, other out-of-pocket expenses, costs, expenses and indemnities (the "*Prepetition Loan Obligations*").

     D.     Without prejudice to the rights of any other party (but subject to the limitations thereon described in paragraph 28 below), the Debtor acknowledges and stipulates that under the terms of the Prepetition Loan Agreements and as security for repayment of the Prepetition Loan Obligations, the Debtor granted to the Lender security interests in, and liens upon substantially all of the Debtor's assets, both tangible and intangible, as more fully described in the Prepetition Loan Agreements, which are incorporated herein by reference (collectively, including the Cash Collateral existing as of the Petition Date, the "*Prepetition Collateral*").

     E.     Without prejudice to the rights of any other party (but subject to the limitations thereon described in paragraph 28 below), the Debtor acknowledges and stipulates that Lender's security interests in and liens on the Prepetition Collateral were properly perfected and are valid and enforceable first priority liens on and security interests in the Collateral. The Debtor acknowledges that there are no other liens on the Prepetition Collateral except for (i) the liens and security interests under the Prepetition Loan Agreements and (ii) the lien of Clark Polk Land, LLC. The Debtor represents that (i) the liens on and security interests in the Prepetition Collateral were granted for fair consideration and reasonably equivalent value and were granted contemporaneously with the making of the loans secured thereby; (ii) it is unaware of any action

---

(...continued)

[1]    Capitalized terms not otherwise defined herein shall have the definitions set forth in the Prepetition Loan Agreements.

taken by the Lender which would result in the postponement or subordination of the Prepetition Loan Obligations; (iii) the value of the Prepetition Collateral in which the Lender asserts a valid and perfected security interest exceeds the amount of the Prepetition Loan Obligations; and (iv) the Prepetition Loan Agreements are valid and enforceable and in full force and effect. The Debtor further acknowledges and stipulates that all of the Debtor's cash on the Petition Date constitutes proceeds of the Prepetition Collateral and, therefore, constitutes Cash Collateral. The Lender is entitled, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral, including for the use of the Cash Collateral, the use, sale or lease of the Prepetition Collateral other than the Cash Collateral and the imposition of the automatic stay under Section 362 of the Bankruptcy Code.

F.    An emergency need exists for the Debtor to use Cash Collateral to continue to operate its business and the Debtor has requested authority to do so as specified in the Budget (as defined below) in order to, inter alia, pay wages, generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets, and to afford the Debtor adequate time to negotiate and seek approval for additional cash collateral use, subject to and within the limits imposed by the mutually agreed upon Budget and further subject to the terms and conditions of this Interim Order.

G.    The use of Cash Collateral is necessary to prevent immediate and irreparable harm to the Debtor's estate and this Interim Order provides solely for the use of Cash Collateral for these limited purposes.

H.    The Lender has consented to the Debtor's use of Cash Collateral conditioned upon the express terms and conditions set forth in this Interim Order.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND, AS APPLICABLE, STIPULATED THAT, EFFECTIVE IMMEDIATELY:**

1.      The Motion is granted on an interim basis, pursuant to the terms and conditions set forth in this Interim Order and any objections thereto that have not previously been withdrawn are overruled.  This Interim Order is valid immediately and fully effective upon its entry.

2.      This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3.      Subject to the terms and conditions of this Interim Order, the Debtor may use Cash Collateral and shall pay its ordinary and necessary business expenses for the period from December 9, 2004 through and including January 7, 2005 (unless extended by Lender in writing), pursuant to the budget attached hereto and incorporated herein as Exhibit A (the "***Budget***") which has been consented to by the Lenders.  The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a monthly basis and the Debtor warrants and represents that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of its business for the period set forth in the Budget.  In no event shall the Debtor use any Cash Collateral to pay any items except as set forth in the Budget or as may be consented to in writing by the Lender.  The Debtor further agrees not to incur any administrative expenses other than as set forth in the Budget without the prior written consent of the Lender or approval by the Bankruptcy Court after notice to the Lender and a hearing; *provided, however,* that the Debtor may pay fees payable

pursuant to 28 U.S.C. § 1930(a)(6) (as set forth in the Budget). Not later than the second (2nd)

business day of each second week, the Debtor shall provide to the Lender a variance report

reflecting, on a line-item basis, the actual cash receipts and disbursements for such prior two (2)

week period, the dollar variance and the percentage variance (the *"Variance Percent"*) of such

actual receipts and disbursements from those reflected in the Budget for those months.  Any

disbursement by the Debtor other than for such expenses set forth in the operative Budget within

the Variance Percent shall constitute an Event of Default under this Interim Order unless the

Lender consents to such disbursements in writing; *provided, however*, that the Debtor may make

payments up to ten percent (10%) in excess of the total budgeted expense for a single expense

category for that month in the Budget so long as actual disbursements for the budgeted expenses

do not exceed one hundred and ten percent (110%) of the budgeted total expenses for that

category for such month of the Budget (collectively, the *"Allowed Variance"*); *provided further,*

*however*, that the Allowed Variance calculation shall not include or apply to budgeted expenses

for professionals' fees, group insurance and utility deposits which shall be limited to the amounts

set forth in the Budget.

> 4.    The Debtor shall continue its cash management system pursuant to which

the Debtor shall direct all collections whether from sales, business activities or otherwise as

proceeds from the sale, use or lease of Collateral (as defined below) to its Operating Account

with Lender and the Lender will have full domain and control over the Cash Collateral and the

cash proceeds of the Collateral (as defined below).  Immediately upon entry of this Interim

Order, the Debtor shall account to the Lender for all cash, checks, notes, drafts, instruments,

acceptances and other property representing cash or other proceeds of the Prepetition Collateral

in the Debtor's possession or control.  All cash, checks, notes, drafts, instruments, acceptances

and other property and interests in property of the Debtors (the "**Cash Proceeds**") currently in the possession of the Debtor or in any accounts in financial institutions, including any lock box or depository accounts, shall be deemed proceeds of the Prepetition Collateral. All Cash Proceeds shall be remitted to the Lender in accordance with the terms of this Interim Order.

5.     The Debtor is hereby required to deliver to the Lender such other financial and other information concerning the business and affairs of the Debtor as the Lender shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Lender under the Prepetition Loan Agreements. The Debtor will permit the Lender, the Lender's agents and the Lender's consultants (the "**Lender's Consultants**"), full access to examine the respective corporate, financial and operating records, and, at the Debtor's expense, make copies thereof, inspect the assets, properties, operations and affairs of the Debtor, visit any or all of the offices or locations of the Debtor to discuss such matters with its officers, independent auditors (and the Debtor hereby authorizes such independent auditors to discuss such matters with the Lender's Consultants), and the Debtor will cooperate with the Lender's Consultants in all respects.

6.     The Debtor's right to use Cash Collateral shall commence on the date of the entry of this Interim Order and expire on the earlier of (a) the close of business on January 7, 2005 (which date may be extended by Lender in writing), (b) the occurrence of any event described in paragraph 27 of this Interim Order, or (c) the entry of a final order entered pursuant to a any subsequent hearing pursuant to paragraph 29 of this Interim Order (the "**Expiration Date**"). In no event shall the Debtor be authorized to use Cash Collateral except strictly in compliance with the terms and conditions of this Interim Order and the Budget.

7.    In providing for the use of Cash Collateral, the Debtor and the Lender stipulate and agree that:

(a)    The Lender has no obligation to provide ongoing financing to the Debtor under the Prepetition Loan Agreements; *provided, however*, that the Lender reserves its rights to pursue any rights and remedies set forth thereunder against the Debtor. Accordingly, the Debtor's right to Use Cash Collateral pursuant to the terms of this Interim Order is wholly dependent upon there being immediately available funds on deposit with Lender.

(b)    Consistent with 11 U.S.C. § 506(b) and in accordance with Paragraph 24 hereof, the Lender may continue to charge to the account of the Debtor and to pay, provisionally, in accordance with the Prepetition Loan Agreements all fees, expenses and other costs owing as of the Petition Date and which may arise in the normal course of the Debtor's business during the Chapter 11 Case, with the Replacement Liens (as defined below) to secure such fees, expenses and other costs, provided however that Lender shall not pay itself any fees, expenses or other costs until the entry of a Final  Order and then only upon ten (10) days prior written notice to the Debtor, United States Trustee and any committee of unsecured creditors appointed in this case;

(c)    The Debtor is not aware of and hereby waives any claim, counterclaim, setoff or defense of any kind or nature which would in any way (i) affect the validity, enforceability and non-avoidability of the Prepetition Loan

Obligations, the Prepetition Loan Agreements, or any of the liens and security interests held by the Lender under the Prepetition Loan Agreements (collectively, the "*Prepetition Liens*"), or (ii) reduce or affect the obligations of the Debtor to pay any of the Prepetition Loan Obligations; and

(d)     Without prejudice to the rights of any other party (but subject to the limitations thereon described in paragraph 28 below), the Debtor hereby stipulates (i) that the Prepetition Liens are valid, perfected and unavoidable, (ii) that the Lender, as of the Petition Date, has an allowed secured claim in the amount of the Prepetition Loan Obligations, and (iii) that Lender and all of its agents, accountants, officers, attorneys, directors, employees and agents shall be and are hereby released from all claims and causes of actions, whether known or unknown, contingent or fixed, liquidated or unliquidated, which claims and causes of actions arose prior to the Petition Date.

8.     The Lender's obligations under this Interim Order are conditional upon and subject to the delivery to the Lender of within seven (7) days after the entry of this Interim Order, (a) evidence satisfactory to the Lender that the Collateral is insured for the full replacement value thereof and Lender is named as loss payee and/or as additional insured on all insurance policies and (b) reaffirmation by Guarantors in form and substance reasonably satisfactory to Lender of its obligations under the Guarantees.

9.     The Lender is not required to advance to the Debtor any amounts that may be available for lending under the Prepetition Loan Agreements with the Debtor. So long as no

defaults exist under this Interim Order, the Lender shall consent to the use by the Debtor of such amounts of Cash Collateral as are deposited in the Operating Account and authorized for use by the Debtor pursuant to the terms and conditions of this Interim Order.

10.    In addition to the existing rights and interests of the Lender in the Prepetition Collateral and for the purpose of attempting to provide adequate protection for the interests of the Lender, the Lender is hereby granted, as security for the Debtor's use of Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, a valid, perfected and enforceable first-priority security interest (the *"Replacement Liens"*) in and upon the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, and all other real and personal property of the Debtor of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all accounts, inventory, instruments, investment property, documents, equipment, fixtures, general intangibles, leases and any and all proceeds and products, whether tangible or intangible, or any of the foregoing, including proceeds of insurance covering any of the foregoing, which Replacement Liens shall be in addition to the security interests of the Lender in the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, in the same extent, validity and order of priority as such security interests existed on the Petition Date (collectively, all of the collateral described in this paragraph, the *"Collateral"*).    For the purpose of attempting to provide adequate protection for the interests of Clark Polk (as defined in the Motion) and only to the extent the Clark Polk Lien (as defined in the Motion) and any other liens are not subsequently avoided, Clark Polk is hereby granted, as security for the Debtor's use of Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, a valid, perfected and enforceable security interest in and upon the Prepetition Collateral, and the

proceeds thereof, and Cash Collateral, and the proceeds thereof, and all other real and personal property of the Debtor of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all accounts, inventory, instruments, investment property, documents, equipment, fixtures, general intangibles, leases and any and all proceeds and products, whether tangible or intangible, or any of the foregoing, including proceeds of insurance covering any of the foregoing, which liens shall be in addition to the security interests of Clark Polk in the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, and shall be junior and subordinate in all respects to the liens and security interests in favor of Lender.

11.     The Replacement Liens herein granted to Lender: (i) are and shall be in addition to all security interests, liens and rights of set-off of the Lender existing on the Petition Date; and  (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Interim Order without any further action by the Debtor or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, filings with the United States Patent and Trademark Office, mortgages or other documents.

12.     The Lender may, in its sole discretion from time to time, file any such financing statements, mortgages, notices of lien or similar instruments, or take any other action to validate or perfect any such security interest, mortgage, or other lien, as the Lender shall deem appropriate in accordance with the terms of this Interim Order and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order. The Debtor and its officers are hereby directed to furnish the Lender any information requested in connection with any such filings.

13.    A certified copy of this Interim Order, in the discretion of the Lender, may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Interim Order for filing or recording.

14.    In addition to the Replacement Liens granted to the Lender pursuant to this Interim Order, the Lender is hereby granted a superpriority administrative claim under Section 507(b) of the Bankruptcy Code (the "*507(b) Claim*") in the full amount allowable under Section 507(b) and the Bankruptcy Code. Other than as set forth in Paragraph 16 hereof, such 507(b) Claim shall be allowed and have priority in payment over all other costs and expenses, now existing or hereafter arising, of the kind specified in or ordered pursuant to Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), and 1114 of the Bankruptcy Code.

15.    The administrative priority for the 507(b) Claim granted hereunder shall be subordinate only to (i) fees payable pursuant to 28 U.S.C. § 1930(a)(6); and (ii) upon the occurrence and during the continuance of an Event of Default (which is not subsequently waived or cured), the payment of accrued and unpaid professional fees and expenses allowed by the Court (whether incurred prior to or subsequent to such Event of Default) of attorneys, accountants, financial advisors or other professionals retained by the Debtor and any statutory committee appointed in the Chapter 11 Case pursuant to 1103 of the Bankruptcy Code, in an aggregate amount not in excess of $100,000.00 (the "*Carve-Out*"), *provided, however*, that any fees and expenses incurred or accrued (regarding of whether such fees and expenses have actually been paid under sections 330, 331 and 503 of the Bankruptcy Code prior to or following an Event of Default) (x) prior to the occurrence of an Event of Default shall not reduce the Carve-Out, and (y) from and after the occurrence of an event of default shall reduce dollar-for-

dollar the Carve-Out. Except with respect to the Carve-Out, no other claim or expense, having a

priority senior to or pari passsu with that granted to the Lender in this Interim Order, shall be

granted in this Chapter 11 Case, or any superseding chapter 7 case.

16.     As additional adequate protection, the Debtor agrees:

(a)     that the Debtor shall obtain the Lender's prior written consent or obtain a

court order after no less than twenty (20) days' notice if the Debtor

proposes a business program that contemplates liquidation of any of the

Debtor's assets outside the ordinary course of business;

(b)     that the Debtor shall pay all post-petition federal, state and county taxes as

and when due;

(c)     that the Debtor shall timely pay interest on the Prepetition Loan

Obligations at the Reference Rate plus two percent (2%); and

(d)     that the Lender may sweep all monies in the Credit Card Account with

Lender into the Operating Account.

17.    ~~Unless the Lender has provided its prior written consent, there shall not be
entered in the Chapter 11 Case any order which authorizes any of the following: (a) the obtaining
of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral
interest or other lien on all or any portion of the Collateral and/or entitled to priority
administrative status which is equal or senior to the Replacement Liens granted to the Lender
herein or (b) the enforcement of any claimed security, mortgage, collateral interest or other lien
of any person other than the Lender on all or any portion of the Collateral.~~

18.     Unless and until the Prepetition Loan Obligations have been repaid in full,

the protections afforded to the Lender under this Interim Order shall survive the entry of any

order confirming a plan of reorganization and the Lender's Prepetition Liens and Replacement Liens in and to the Collateral and the 507(b) Claim shall continue in these proceedings, and the Lender's Prepetition Liens, Replacement Liens and 507(b) Claim shall maintain its priority as provided by this Interim Order until the Prepetition Loan Obligations have been repaid in full. The Prepetition Liens and Replacement Liens and 507(b) Claim granted to the Lender under this Interim Order and the priority thereof, shall be binding on the Debtor and all creditors of the Debtor, subject to paragraph 26 below.

19.     The use of Cash Collateral by the Debtor shall give rise to an obligation of the Debtor to the Lender for repayment of an amount equal to the amount of the Cash Collateral used and shall be secured by the Replacement Liens.

20.     The Lender and the Debtor may make non-material modifications or amendments to the Budget without further order of this Court, and all actions taken pursuant to such modified Budget shall be and hereby are expressly authorized hereunder. The Lender may consent in writing to extend the Expiration Date without a further hearing or order of this Court. If the Lender determines to do so, written notification of such extension shall be provided to all parties-in-interest.

21.     The rights and obligations of the Debtor and the rights, claims, security interests, liens and priorities of the Lender arising under this Interim Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities granted under the Prepetition Loan Agreements.

22.     The Debtor, without further motion to or hearing by the Court, shall reimburse the Lender promptly for all costs and expenses (including, without limitation, all filing and recording fees, reasonable attorneys' and paralegals' fees and expenses and out-of-pocket

audit expenses) incurred by the Lender at any time in connection with or related in any way to the Prepetition Collateral, the Cash Collateral, the Replacement Liens or the 507(b) Claim, including, without limitation, costs and expenses in connection with: (i) preparation of the Motion, this Interim Order, any other interim or final Order relating to the Debtor's Cash Collateral use, and related instruments, documents and agreements; (ii) preservation of and protection of the Lender's rights hereunder and thereunder; (iii) collection of all loans by the Lender to the Debtor; (iv) defense of any claim or action asserted or brought any the Lender by any person that arises from or relates to the Prepetition Loan Obligations, this Interim Order, any other interim or Final Order relating to the Debtor's Cash Collateral use, the Lender's claims against the Debtor, or any and all matters in connection therewith; (v) commencement or defense of, or intervention in any proceeding in this case; (vi) the filing of any petition, complaint, answer, motion, or other pleading, or taking of any other action in or with respect to the Collateral; (vii) the protection, collection, lease, sale, taking possession of, or liquidation of any of the Collateral; (viii) any attempt to enforce any security interest in any of the Collateral; or (ix) the receipt of any professional advice with respect to any of the foregoing, provided however that Lender shall not pay itself any fees, expenses or other costs until the entry of a Final Order and then only upon ten (10) days prior written notice to the Debtor, United States Trustee and any committee of unsecured creditors appointed in this case. Said costs and expenses shall constitute postpetition obligations of the Debtor and shall be paid by Lender debiting such amounts when due from the funds in the Operating Account. The disallowance by the Court of any such fees, costs, and expenses shall not affect the Lender's right to collect such amounts from any person or entity other than the Debtor.

23.    The notice given by the Debtor of the Preliminary Hearing was given in accordance with Bankruptcy Rule 4001(c)(2). The Debtor shall serve a copy of this Interim Order by overnight delivery or telefax notice not later than 5:00 p.m. on December 13, 2004, upon (i) counsel for the Lender, (ii) counsel for Clark Polk, (iii) the United States Trustee, (iv) the 20 largest unsecured creditors, and (v) any creditors who have filed a request with this Court for notices.

24.    The provisions of this Interim Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of the Lender. Any stay, modification, reversal or vacation of this Interim Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to this Interim Order. Notwithstanding any such stay, modification, reversal or vacation, all use of the Cash Collateral prior to written notice to the Lender of the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lender shall be entitled to all the rights, privileges and benefits.

25.    Notwithstanding anything to the contrary in this Interim Order, the Debtor's authority to use Cash Collateral pursuant to this Interim Order shall terminate immediately and automatically (the "**_Termination Date_**"), (a) upon the delivery of written notice to the Debtor by the Lender of any breach, default or Event of Default of any terms and provisions of this Interim Order or the Prepetition Loan Agreements, or (b) without notice of any kind upon (i) the Expiration Date, (ii) the conversion of the Chapter 11 Case to a Chapter 7 case or appointment of a trustee without the consent of the Lender, (iii) the initiation by any person of any lawsuit or adversary proceeding seeking to challenge the validity or priority of (or to subordinate) any of the Lender's liens and security interests on any of the Collateral between

now and the Expiration Date and (iv) the use of Cash Collateral in excess of amounts permitted under this Interim Order. The automatic stay pursuant to Section 362 of the Bankruptcy Code shall be deemed lifted and modified, after three (3) days notice to the Debtor, the United States Trustee and any committee of unsecured creditors appointed in this case, without further order of this Court, to permit the Lender to exercise any and all of their rights and remedies under the Prepetition Loan Agreements and this Interim Order, thereby permitting the Lender, *inter alia*, to receive and apply collections of the Collateral, to file any financing statements or other instruments and documents, if any, evidencing its security interests in and liens on the Collateral, and to charge any fees and interest as provided herein and in the Prepetition Loan Agreements; *provided, however*, that the obligations and rights of the Lender and Debtor with respect to all transactions which have occurred prior to the Termination Date, including, without limitation, the Lender's security in Collateral and Debtor's right after notice and a hearing to (i) use Cash Collateral, (ii) reinstate, or defend against the lifting of, the automatic stay, or (iii) contest the existence of a default or event of default, shall remain unimpaired and unaffected by any such termination and shall survive such termination; and *provided further, however,* that upon such termination, the Lender and the Debtor shall be deemed to have retained all of their rights and remedies, including, without limitation, those provided pursuant to the Prepetition Loan Agreements, this Interim Order and the Bankruptcy Code, and Debtor's right after notice and a hearing to (i) request the use of Cash Collateral, (ii) seek to reinstate, or defend against the lifting of, the automatic stay, or (iii) contest the existence of a default or Event of Default.

26.     The terms of this Interim Order shall be binding upon all parties in interest, including without limitation, the Debtor and any statutory committees appointed in the Chapter 11 Case, unless (i) a party in interest other than the Debtor and any guarantor of the

Prepetition Loan Obligations (including any statutory committee appointed in the Chapter 11 Case) has properly filed an adversary proceeding or commenced a contested matter challenging the amount, validity, enforceability, perfection or priority of the Prepetition Loan Obligations or the Lender's liens on the Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Lender relating to the Prepetition Loan Obligations on behalf of the Debtor's estates, no later than the date that is sixty (60) days after the first meeting of creditors pursuant to Section 341 of the Bankruptcy Code, and (ii) the Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced as of such date: (x) the Prepetition Loan Obligations shall constitute an allowed first priority secured claim, not subject to subordination and otherwise unavoidable, and (y) for all purposes in the Chapter 11 Case and any subsequent Chapter 7 cases, the Lender's liens on the Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination or otherwise unavoidable, and the Lender, the Prepetition Loan Obligations and the Lender's liens on the Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without, limitation, any successor thereto. If any such adversary proceeding or contested matter is properly commenced as of such date, the findings contained in the recital paragraphs of this Interim Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter.

27.    The Final Hearing on the Debtor's Cash Collateral use shall be heard before this Court on January 6, 2005 at 10:30 a.m. before the Honorable Jacqueline R. Cox_____, Bankruptcy Judge, in **Courtroom 619 of the U.S.**

**Courthouse, 219 South Dearborn Street, Chicago, Illinois.** Any party-in-interest objecting to the relief sought in the final order shall be made in writing and filed with the Court (with a courtesy copy to chambers) and served (so as to be received) no later than _____, 2004 *January 3, 2005* by 4:00 p.m. local Chicago time, on: (i) Shaw Gussis Fishman Glantz Wolfson & Towbin LLC, 321 N. Clark Street, Suite 800, Chicago, Illinois 60610 (Attn: Robert W. Glantz, Esq.), bankruptcy counsel to the Debtor; (ii) Vedder, Price, Kaufman & Kammholz, P.C., 222 North LaSalle Street, Suite 2600, Chicago, Illinois 60601 (Attn: Michael M. Eidelman, Esq.), counsel to the Lender; ~~and~~ (iii) the United States Trustee *and (iv) Freeborn & Peters LLP, 311 S. Wacker Dr. Suite 3000, Chicago, Illinois 60606 (Attn: Neil Levin, Esq. & Aaron L. Hammer Esq.), Counsel to Clark Four Land.*

28.     The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns ~~(including any trustee hereinafter appointed as a representative of any estate herein or of any estate in any superseding case under the Bankruptcy Code)~~ *(by)*. The Debtor, on behalf of itself and its respective successors and assigns, hereby releases and discharges the Lender, its agents, officers, directors and employees, from all claims and causes of action arising out of the Lender's relationship with the Debtor prior to the date of this Interim Order.

29.     Unless the Lender expressly consents, no plan of reorganization confirmed in this Chapter 11 Case or any other order (including, without limitation, any order for financing of or extensions of credit to or incurring of debt by the Debtor pursuant to Section 364 of the Bankruptcy Code or otherwise), shall impair, alter or otherwise modify the rights of the Lender under this Interim Order or the Prepetition Loan Agreements.

30.     The Lender shall be entitled, pursuant to Section 363(k) of the Bankruptcy Code, to credit bid the full amount of the Prepetition Loan Obligations and any postpetition obligations in connection with any sale of the Collateral.

31.     If any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed by subsequent Order of this or any other Court, such stay, modification or vacation shall not affect the validity of any debt to the Lender incurred pursuant to this Interim Order prior to the effective date of such stay, modification or vacation, or the validity or enforceability of any lien or priority authorized hereby with respect to such debt. Notwithstanding any such stay, modification or vacation, any advances of funds made pursuant to this Interim Order by the Lender prior to the effective date of such stay, modification or vacation, to or for the benefit of the Debtor, shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to such advances.

32.     Other than as expressly set forth above, no rights are created hereunder for the benefit of any third party, any creditor (other than the Lender) or any direct, indirect or incidental beneficiary.

33.     No waiver, modification, or amendment of any of the provisions of this Interim Order shall be effective unless set forth in writing, signed by the parties required under the Prepetition Loan Agreements and approved by the Court.

34.     In the event of any irreconcilable inconsistency between this Interim Order and any agreement heretofore or hereafter entered into by the Debtor and the Lender, the terms of this Interim Order shall govern and control.

SO ORDERED, ADJUDGED, DECREED, AND STIPULATED THIS ____ DAY OF DECEMBER, 2004.

J. Cox  *Jacqueline P. Cox*
UNITED STATES BANKRUPTCY JUDGE

DEC 0 9 2004

Interim Order Prepared and Consented to by:

Robert W. Glantz (#6201207)
SHAW GUSSIS FISHMAN GLANTZ WOLFSON
   & TOWBIN LLC
321 N. Clark Street
Suite 800
Chicago, Illinois  60610
(312) 541-0151
Attorneys for Debtor

Michael M. Eidelman (#6197788)
VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois  60601
(312) 609-7500
Attorneys for the Lender

## Mid- City Parking  Budget
remainder of December 04, January 05, February 05, March 05.

| Receipts | Dec.04 | Jan. 05 | Feb, 05 | Mar.05 | Totals |
|---|---|---|---|---|---|
|  | 282,850.00 | 381,125.00 | 388,825.00 | 437,750.00 | 1,490,550.00 |

### Cost of Operations

| | Dec.04 | Jan. 05 | Feb, 05 | Mar.05 | Totals |
|---|---|---|---|---|---|
| Salaries Officers | 7,500.00 | 22,500.00 | 22,500.00 | 22,500.00 | 75,000.00 |
| Salaries Others | 99,550.48 | 67,339.05 | 69,487.50 | 55,655.50 | 282,032.53 |
| Accounting | | 3,000.00 | 3,000.00 | 3,000.00 | 9,000.00 |
| Association Dues | 0.00 | 1,500.00 | 150.00 | 150.00 | 1,800.00 |
| Auto Expenses | 1,450.00 | 1,450.00 | 1,450.00 | 1,450.00 | 5,800.00 |
| Auto Insur. Co.autos | 0.00 | 1,568.90 | 0.00 | 0.00 | 1,568.90 |
| Bank Charges | 1,450.00 | 1,450.00 | 1,450.00 | 1,450.00 | 5,800.00 |
| Auto Damages | 850.00 | 850.00 | 850.00 | 850.00 | 3,400.00 |
| Utilities | 9,000.00 | 6,100 | 6,100.00 | 6,100.00 | 27,300.00 |
| Health WelfarePens. | 0.00 | 36,500.00 | 19,630.40 | 18,250.00 | 73,380.40 |
| Health Insur. | 3,650.00 | 3,650.00 | 3,650.00 | 3,650.00 | 14,600.00 |
| Interest Exp. | 4,675.00 | 6,375.00 | 6,375.00 | 6,375.00 | 23,800.00 |
| Inspection Fees | 850.00 | 850.00 | 575.00 | 525.00 | 2,800.00 |
| Garage Liability Ins. | 0.00 | 22,500.00 | 14,000.00 | 14,000.00 | 50,500.00 |
| Workers. Comp. | 0.00 | 4,000.00 | 2,480.00 | 2,480.00 | 8,960.00 |
| Legal Expense | 30,000.00 | 7,500.00 | 7,500.00 | 7,500.00 | 52,500.00 |
| Mainten. & Repairs | 0.00 | 2,200.00 | 2,700.00 | 2,700.00 | 7,600.00 |
| Office Supplies | 500.00 | 500.00 | 500.00 | 500.00 | 2,000.00 |
| Rent | 0.00 | 180,250.00 | 180,250.00 | 180,250.00 | 540,750.00 |
| License fees | 0.00 | 0.00 | 11,000.00 | 0.00 | 11,000.00 |
| Parking tax | 0.00 | 48,000.00 | 64,750.00 | 64,750.00 | 177,500.00 |
| Telephone | 1,900.00 | 1,100.00 | 1,100.00 | 1,100.00 | 5,200.00 |
| U.S. trustee fee | 0.00 | 0.00 | 0.00 | 5,000.00 | 5,000.00 |
| Tickets, tags | 0.00 | 2,600.00 | 0.00 | 0.00 | 2600 |
| Uniforms | 0.00 | 225.00 | 225.00 | 225.00 | 675.00 |
| Water | 235.00 | 235.00 | 235.00 | 235.00 | 940.00 |
| Signs | 1,500.00 | 3,000.00 | 0.00 | 0.00 | 4,500.00 |
| Miscellaneous | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 12,000.00 |
| **Operating Cost** | 166,110.48 | 427,242.95 | 412,957.90 | 401,695.50 | 1,408,006.83 |


EXHIBIT
A