## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Mid-City Parking, Inc. | ) | 04 B 45177 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |

### MEMORANDUM OPINION

This matter presents the question of whether a trustee or debtor-in-possession may

unilaterally waive the protections of the automatic stay to proceed with acts of estate

administration that would otherwise violate 11 U.S.C. § 362(a) if performed by anyone else.

Clark Polk Land, LLC ("Clark Polk") has requested an award of costs and attorneys' fees

incurred as the result of an appeal that the debtor-in-possession, Mid-City Parking, Inc. ("Mid-

City"), allegedly filed in willful violation of the automatic stay imposed by § 362(a). The Court

holds that a trustee or debtor-in-possession has such authority and furthermore denies Clark

Polk's motion.

### Background

Mid-City became a debtor-in-possession upon filing a petition for Chapter 11 bankruptcy

relief on December 8, 2004, thereby triggering the automatic stay of 11 U.S.C. § 362(a). Prior to

this filing, Clark Polk obtained a state court judgment against the debtor in the amount of

$337,198.27 on August 4, 2004; the debtor's counterclaims against Clark Polk and Richard

G'Sell were defeated the same day. On November 29, 2004, Clark Polk received an additional

award of $90,582.08 for attorneys' fees, costs, and prejudgment interest. Subsequent to the

Chapter 11 filing, on January 24, 2005, the debtor-in-possession appealed the entire $427,780.35

judgment to the Appellate Court of Illinois but did so without obtaining stay modification under

§ 362(d). Clark Polk brought a motion to dismiss the appeal before the Appellate Court of

Illinois, arguing that the automatic stay in the Chapter 11 case prevented the debtor-in-possession

from filing a notice of appeal from the state court judgment. On March 4, 2005, the Appellate

Court of Illinois agreed with Clark Polk's position and dismissed Mid-City's appeal from the

judgment.

In this bankruptcy case, Clark Polk has brought the instant motion for the costs and

attorneys' fees incurred both to obtain dismissal of the state court appeal and to recover the costs

and fees incurred in pursuing this motion. Clark Polk contends that the award is warranted under

11 U.S.C. § 105(a)[1] because Mid-City's violation of § 362(a) was willful – that is, because Mid-

City was aware the stay existed when it engaged in an intentional act in violation thereof.

### Jurisdiction

Initially, the Court must determine whether it has subject matter jurisdiction over this

controversy, and if need be, federal courts must do so *sua sponte*. *See Maritime Electric Co. v.*

*United Jersey Bank*, 959 F.2d 1194, 1198, 1208 (3d Cir. 1991). The general rule of the *Rooker-*

*Feldman* doctrine states that after a state court with jurisdiction over a federal question enters a

final judgment on that question, be it a statutory or constitutional ruling, a federal court with

original jurisdiction under 28 U.S.C. sections 1331, 1332, or 1334 in a subsequently filed suit has

no jurisdiction to review that state court ruling and all other matters "inextricably tied to" it; the

---

[1]"(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

2

federal question must be appealed to the state's highest court and then to the U.S. Supreme Court under 28 U.S.C. § 1257. *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1078-79 (9th Cir. 2000); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483-86 & n.16 (1983); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521-23 & n.1, 1527 (U.S. 2005); Kathleen P. March & Jennifer Hildebrandt, *The Many Ways to Win or Lose on Your Bankruptcy Issue in State Court; or, Why Bankruptcy Lawyers and Judges Who Thought State Court Was Irrelevant to Bankruptcy Practice Guessed Wrong*, 25 **Cal. Bankr. J.** 332, 342-43 (2000). Federal courts have nonetheless recognized specific statutory provisions that permit federal courts with original jurisdiction to entertain a collateral attack for certain federal questions litigated in state courts, most notably where the federal courts had exclusive jurisdiction over the federal question in the first place, *see Gruntz*, 202 F.3d at 1079-80.

Bankruptcy is a particularly difficult area of law in which to determine whether a state court decision is subject to collateral attack in spite of the *Rooker-Feldman* doctrine. The federal district courts – and by reference, the bankruptcy courts – have "original and exclusive jurisdiction of all cases under title 11" while also having "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. A problem results from the fact that any type of civil proceeding concerning the automatic stay of 11 U.S.C. § 362 could rationally be deemed a "civil proceeding[] arising under title 11, or arising in . . . cases under title 11," § 1334(b), and could furthermore be deemed a proceeding over which state courts have concurrent jurisdiction. If a state court enters a final order for a federal question over which it has concurrent jurisdiction, the *Rooker-Feldman* doctrine will normally prevent a collateral attack in a federal district or bankruptcy court. If a

3

state court enters an order for an issue that is within the exclusive province of federal courts, the
order is subject to collateral attack in federal courts with original jurisdiction. *See Gruntz*, 202
F.3d at 1079-80; *In re Benalcazar*, 283 B.R. 514, 526-27 (Bankr. N.D. Ill. 2002). The automatic
stay carries with it a variety of issues, including whether it applies to a given action at the
inception of the bankruptcy case, § 362(a)-(b), whether it eventually dissolves by operation of
law, § 362(c), whether grounds for modification or termination by separate judicial order exist, §
362(d), and whether a willful stay violation caused an "individual" to suffer actual damages, §
362(h). Section 1334(a)-(b) of Title 28 does not set forth which issues are so closely tied to the
bankruptcy "case" that the bankruptcy court has exclusive jurisdiction and which ones are "civil
proceedings" over which state courts have concurrent jurisdiction. *See, e.g., Halas v. Platek*, 239
B.R. 784, 790-92 (N.D. Ill. 1999) (describing two different interpretations).

　　　While the federal statute provides little guidance on these questions, case law has
established a sort of *ad hoc* hybrid system for dealing with the first of the stay issues listed
above.[2] The system and its rationale are as follows. Nonbankruptcy forums in both the state and
federal systems have jurisdiction to initially determine whether pending litigation is stayed
pursuant to § 362, *see In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir. 1985)
(federal district court in another district); *Chao v. Hosp. Staffing Servs.*, 270 F.3d 374, 384 (6th
Cir. 2001) (same); *In re Benalcazar*, 283 B.R. 514, 528-29 (Bankr. N.D. Ill. 2002),[3] a concept

---

[2]*Cf. Halas v. Platek*, 239 B.R. 784, 792-93 & n.6 (N.D. Ill. 1999) (holding that state courts have no subject-matter jurisdiction to impose § 362(h) sanctions for willful stay violations while noting that they might have jurisdiction to determine whether it applies to the state court proceeding as an initial matter).

[3]Some authorities have incorrectly suggested that state courts have no subject matter jurisdiction at all to rule on the scope and applicability of the automatic stay in the first instance, because such a matter could be deemed a "core proceeding" under 28 U.S.C. § 157(b). *See Gruntz*, 202 F.3d at 1082-83; March & Hildebrandt, *supra*, at 344-48. Unfortunately, that conclusion would mean that in every instance that the automatic stay could potentially

4

which appears to be related to the idea of jurisdiction to determine jurisdiction, *see Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1105-07 (9th Cir. 2005); *In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir. 1985). The bankruptcy court from which the automatic stay originated nonetheless has the final say. *Baldwin-United Corp. Litigation*, 765 F.2d at 346, 348-49. The automatic stay, which is "an injunction issuing from the authority of the bankruptcy court," is "central" to the bankruptcy "case" over which district courts have "exclusive jurisdiction." *Gruntz*, 202 F.3d at 1081-82. It is "central" because § 362(a) is considered the primary means by which Congress, through its grant of plenary power, has chosen to centralize the control over and administration of bankruptcy cases in bankruptcy courts.[4] *Gruntz*, 202 F.3d at 1079-80; *Chao v. Hosp. Staffing Servs.*, 270 F.3d 374, 382 (6th Cir. 2001). Furthermore, to the extent that an action pending in a nonbankruptcy forum – including a different federal district court – is stayed under § 362(a), that other forum has no subject matter jurisdiction while the stay remains in effect. *Chao*, 270 F.3d at 383-84, 394-95. If a state court, by the effect of its orders, "modifies" the automatic stay within the meaning of § 362(d), then such state court interferes

apply to a state court proceeding, the state court would be required to issue an independent stay under state law and await an individualized order from the bankruptcy court so as to avoid any sort of implicit ruling on a matter over which it has no subject matter jurisdiction. *See In re Benalcazar*, 283 B.R. 514, 529 (Bankr. N.D. Ill. 2002) (referring to the "pre-1930 era of individualized stay orders"). In the present scenario, for instance, the Appellate Court of Illinois would have had no authority to dismiss Mid-City's appeal because it could not have even considered Clark Polk's argument that § 362(a) prohibited the debtor-in-possession from filing a notice of appeal; it would have had to sit and wait for an order from this Bankruptcy Court.

    The federal statute, however, implies that state courts do have concurrent jurisdiction over at least some types of disputes that are "civil proceedings arising under title 11, or arising in . . . cases under title 11," 28 U.S.C. § 1334(b), and an initial ruling as to the automatic stay's scope falls within this category. Whether a proceeding is "core" is not necessarily dispositive of whether a state court has concurrent jurisdiction under § 1334(b). A "determination[] as to the dischargeability of particular debts" is a "core proceeding" under § 157(b)(2)(I), yet state courts have concurrent subject matter jurisdiction to try all but four of the exceptions to discharge under § 523(a). 11 U.S.C. § 523(c)(1); March & Hildebrandt, *supra*, at 346-47.

    [4]*See, e.g., In re Motley*, 10 B.R. 141, 144 (Bankr. M.D. Ga. 1981) ("It would appear that 11 U.S.C. s 362, the Automatic Stay, was enacted to supplement and aid the grant of exclusive jurisdiction to the bankruptcy court in [the original jurisdictional section for cases under the 1978 Bankruptcy Code].").

with the bankruptcy court's power to enforce and/or modify its own injunction protecting its

exclusive jurisdiction. *Gruntz*, 202 F.3d at 1082-84. A state court effectively "modifies" the stay

under § 362(d) if its decision concerning the applicability of the automatic stay differs from the

bankruptcy court's (or reviewing federal court's) determination. This modification would occur

both if the state court eliminated a portion of the stay by utilizing an inapplicable exception in §

362(b), *see, e.g., Benalcazar*, 283 B.R. at 528, and if the state court broadened the stay by

applying it beyond the scope delineated in § 362(a). Thus, the federal courts must have the final

word on "the scope and applicability of the automatic stay" with respect to a given course of

conduct so as to prevent an inadvertent state-court modification of a federal injunction under §

362(d) – an injunction intended to preserve a federal court's exclusive jurisdiction over the *in

rem* proceeding that is the bankruptcy "case" under 28 U.S.C. § 1334(a). *Gruntz*, 202 F.3d at

1082-84. Furthermore, collateral challenges to a state court's automatic-stay determination are

not forbidden by the *Rooker-Feldman* doctrine, because the bankruptcy court is viewed as

enforcing its own injunction pursuant to the Supremacy Clause rather than conducting

unauthorized appellate review of a state court order. *See Gruntz*, 202 F.3d at 1083; *Chao*, 270

F.3d at 384; March & Hildebrandt, *supra*, at 345-48; *cf. Raymark Industries v. Lai*, 973 F.2d

1125, 1131-32 (3d Cir. 1992) (distinguishing a permissible collateral attack on an automatic-stay

determination from a collateral attack on the merits of state court litigation).

This understanding of the automatic stay and the *Rooker-Feldman* doctrine goes beyond

the rationale sometimes used to justify a bankruptcy court's independent, successive review of

the scope and applicability of § 362(a) and (b). In some scenarios the state court determines that

the automatic stay does not apply (or that an exception does apply), but the bankruptcy court

6

subsequently reaches the opposite conclusion, meaning that the proceeding was in fact stayed. In those instances the federal court can deem the state court proceeding to be null and void *ab initio*, *see Kalb v. Feuerstein*, 308 U.S. 433, 438-39, 60 S. Ct. 343 (1940); *Raymark Industries v. Lai*, 973 F.2d 1125, 1126-27, 1131-32 (3d Cir. 1992); *In re Benalcazar*, 283 B.R. 514, 525-29 (Bankr. N.D. Ill. 2002), and the *Rooker-Feldman* doctrine no longer poses an obstacle to the federal court's adjudication of § 362. However, in other instances the state and federal courts will agree on the scope and applicability of § 362(a)-(b), or, as here, the federal court may find that the automatic stay does not pose an obstacle to a debtor-in-possession after the state court concluded that it does. In those instances, the federal court may also readdress the legal question the automatic stay posed to the state court for all of the aforementioned rationales.[5]

A rule has emerged for both state and federal courts handling nonbankruptcy litigation that is somehow tied to the filing of a federal bankruptcy case: The state or federal forum handling the nonbankruptcy litigation has concurrent jurisdiction to initially determine whether § 362(a)-(b) stays the proceeding, but the federal bankruptcy forum may entertain a collateral attack on that ruling. *Baldwin-United Corp. Litigation*, 765 F.2d at 346, 348-49;[6] *Benalcazar*, 283 B.R. at 529. The parties herein have not litigated subject matter jurisdiction, and this Court,

---

[5]In *Gruntz*, for example, a California court determined that a stay exception in § 362(b) permitted a criminal prosecution of a debtor to proceed, and the Ninth Circuit Court of Appeals independently reached the same conclusion. Thus, the Ninth Circuit conducted an independent review even though the California proceeding was never deemed null and void *ab initio*.

Although Judge Wedoff's *Benalcazar* opinion relied on the "null and void *ab initio*" rationale to relitigate the scope of § 362 in that case, it also contains dicta indicating that a federal court may separately address such questions in every case in spite of the *Rooker-Feldman* doctrine. *In re Benalcazar*, 283 B.R. 514, 529 (Bankr. N.D. Ill. 2002).

[6]"The necessary uniformity is best achieved by centralizing construction of the automatic stay in the Bankruptcy Court, subject to review in the Sixth Circuit, with ultimate review in the Supreme Court available if warranted." *Baldwin-United Corp. Litigation*, 765 F.2d at 349.

having no intention of upsetting established common-law rules, will proceed to the merits.

## Discussion and Analysis

To determine the application of § 362(a)(1),[7] one must disaggregate all of the complaints,

counterclaims, cross-claims, third-party claims, and motions for Rule 11 sanctions that are part of

the lawsuit. *See Parker v. Bain*, 68 F.3d 1131, 1137-38 & nn. 9-10 (9th Cir. 1995); *see also*

*Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-06 (3d Cir. 1991); *In re*

*Horkins*, 153 B.R. 793, 799 (Bankr. D. Tenn. 1992). *Contra Ass'n of St. Croix Condominium*

*Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir. 1982) (lumping application of stay

to both of the cross-appeals together). One must then determine with respect to each component

whether, at its inception, the claim was "against the debtor"; one must not look at who most

recently prevailed at any subsequent point, including all levels of appeal. *See Parker v. Bain (In*

*re Parker)*, 68 F.3d 1131, 1135-38 (9th Cir. 1995); *Teachers Ins. and Annuity Ass'n of America v.*

*Butler*, 803 F.2d 61, 65 (2nd Cir. 1986); *Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)*, 357

F.3d 433, 439 (4th Cir. 2004); *Farley v. Henson*, 2 F.3d 273, 275 (8th Cir. 1993); *Cathey v.*

*Johns-Manville Sales Corp.*, 711 F.2d 60, 61-62 (6th Cir. 1983); *Maritime Electric Co. v. United*

*Jersey Bank*, 959 F.2d 1194, 1204, 1206-07 (3d Cir. 1991); *In re New York Stock Exch.*

---

[7]

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or
303 of this title, . . . operates as a stay, applicable to all entities, of--
(1) the commencement or continuation, including the issuance or employment of process, of a
judicial, administrative, or other action or proceeding against the debtor that was or could have
been commenced before the commencement of the case under this title, or to recover a claim
against the debtor that arose before the commencement of the case under this title;
. . .
(3) any act to obtain possession of property of the estate or of property from the estate or to
exercise control over property of the estate . . . .

11 U.S.C. § 362(a)(1), (3).

*Arbitration*, 943 F.2d 249, 250 (2d Cir. 1991); *Ingersoll-Rand Financial Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1426-27 (9th Cir. 1987); *Delpit v. Commissioner*, 18 F.3d 768, 770, 773 (9th Cir. 1994); *Simon v. Navon*, 116 F.3d 1, 3-4 (1st Cir. 1997); *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir. 1982); *Commerzanstalt v. Telewide Sys.*, 790 F.2d 206, 207 (2d Cir. 1986); *In re Tampa Chain Co.*, 835 F.2d 54, 55 (2d Cir. 1987); *Teachers Ins. & Annuity Asso v. Butler*, 803 F.2d 61, 64-65 (2d Cir. 1986); *Marcus, Stowell & Beye Gov't Secs. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230 & n.4 (5th Cir. 1986); *In re Horkins*, 153 B.R. 793, 799 (Bankr. D. Tenn. 1992); *In re Capgro Leasing Assocs.*, 169 B.R. 305, 310-11 (Bankr. E.D.N.Y. 1994); *Taylor v. Barnett Bank*, 737 So. 2d 1105, 1105-06 (Fla. Dist. Ct. App. 1998); *cf. In re Townview Nursing Home*, 28 B.R. 431, 445-46 (Bankr. S.D.N.Y. 1983) (administrative appeal from Department of Health's audit constituted the continuation of a proceeding against the debtor).[8]  To the extent that the claim was not "against" the debtor at its inception because the debtor occupied a plaintiff's position, its further prosecution is not stayed pursuant to § 362(a)(1).[9]  *See Aiello v. Providian Financial Corp.*, 239 F.3d 876, 880 (7th Cir.

---

[8]*Contra Greenspoint Palms, Ltd. v. Greenspoint Co.*, 795 S.W.2d 219, 220 (Tex. App. 1990); *Southern Bank & Trust Co. v. Harley*, 295 S.C. 423, 425 (S.C. 1988) (holding that stay does not apply when result of appeal would be either to uphold existing liability determination or to reduce the same, i.e., when the estate cannot be harmed by continuing the proceeding initiated against the debtor).

[9]In this latter scenario, claims that a debtor holds against creditors or third parties are considered property of the bankruptcy estate pursuant to § 541(a). *Martin-Trigona v. Champion Federal Sav. & Loan Asso.*, 892 F.2d 575, 577 (7th Cir. 1989); *In re General Associated Investors Ltd. Pshp.*, 159 B.R. 551, 554 (Bankr. D. Ariz. 1993); 3 *Collier On Bankruptcy* ¶ 323.LH[2][a], at 323-14 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2004). Even though such claims are not stayed pursuant to § 362(a)(1), a different aspect of the automatic stay might apply pursuant to § 362(a)(3), which prohibits "any act to . . . exercise control over property of the estate." The law is less well settled in situations where property of the estate includes a claim brought by the debtor, and, as in Chapter 7 and 13 cases, the debtor and the trustee are not the same entity. If either the debtor-plaintiff or the defendant takes any course of action in the lawsuit belonging to the estate that could be deemed an attempt to "exercise control over property of the estate," including filing a motion to dismiss the debtor-plaintiff's lawsuit, the stay may be violated. *Compare Martin-Trigona*, 892 F.2d at 577 *with In re General Associated Investors Ltd. Pshp.*, 159 B.R. 551 (Bankr. D. Ariz. 1993); *Henkel v. Lickman (In re Lickman)*, 297 B.R. 162 (Bankr. D. Fla. 2003).

In *Martin-Trigona*, the Seventh Circuit held that the state court defendant's motion to dismiss the debtor-

2001); *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002); *Martin-Trigona v. Champion Federal Sav.
and Loan Ass'n*, 892 F.2d 575, 577-78 (7th Cir. 1989); *Maritime Electric Co. v. United Jersey
Bank*, 959 F.2d 1194, 1203-08 (3d Cir. 1991); *Carley Capital Group v. Fireman's Fund Ins. Co.*,
889 F.2d 1126, 1127 (D.C. Cir. 1989); *Farley v. Henson*, 2 F.3d 273, 274-75 (8th Cir. 1993);
*Parker v. Bain (In re Parker)*, 68 F.3d 1131, 1137-38 (9th Cir. 1995). *Contra Ass'n of St. Croix
Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir. 1982) (staying a
cross-appeal that was initially a counterclaim brought by the debtor); *In re General Associated
Investors Ltd. Pshp.*, 159 B.R. 551, 553-54 (Bankr. D. Ariz. 1993) (looking narrowly at whether
a specific action, appeal, or motion within a lawsuit is "against" the debtor).

     Here, because Clark Polk initially filed a complaint against Mid-City in the Circuit Court
of Cook County, the suit was an "action or proceeding against the debtor" within the meaning of
§ 362(a)(1), and all stages of the controversy were automatically stayed, at least initially, when
Mid-City filed the present Chapter 11 bankruptcy case. 11 U.S.C. § 362(a)(1). This is well-
settled law that does not depend on which party had most recently prevailed, the ultimate

plaintiff's lawsuit did not violate the automatic stay provision in § 362(a)(3), but it did so without any discussion of
whether such an action should be deemed an attempt "to exercise control over property of the estate." The absence
of analysis on this point has caused other courts to reject it, instead finding that when a debtor-plaintiff's opponent
files a motion to dismiss the civil proceeding, that defendant is attempting to "control" the cause of action belonging
to the bankruptcy estate in violation of § 362(a)(3). *In re General Associated Investors Ltd. Pshp.*, 159 B.R. 551,
554-55 (Bankr. D. Ariz. 1993).

     In another line of cases, a Chapter 7 debtor is found to be in violation of § 362(a) by attempting to wrest
control over the *prosecution* of an action in a nonbankruptcy forum from the case trustee. In *Henkel v. Lickman (In
re Lickman)*, 297 B.R. 162 (Bankr. D. Fla. 2003), the Chapter 7 trustee's administration of the bankruptcy estate
included litigating the debtor's right to 15% of a probate estate in a Pennsylvania probate court, and the trustee
eventually sold such asset to a cousin who was the executrix and major beneficiary under the will. After the debtor
unsuccessfully challenged the trustee's right to the cause of action in probate court and in other collateral attacks, the
bankruptcy court found that the debtor violated § 362(a)(3) by attempting to usurp control over the probate asset.
*See id.* at 188-90; *see also Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 190-92 (9th Cir. 1995).

     In this case, the Chapter 11 debtor-in-possession Mid-City was the defendant in the initial lawsuit that Clark
Polk filed in Illinois state court, so the cause of action could not be considered property of the estate protected by the
restraining provisions of § 362(a)(3).

disposition of the claim, the current stage of the litigation, or the existence of any pending appeal

from a final judgment. *See Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 439

(4th Cir. 2004); *Teachers Ins. & Annuity Asso v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *Ellison

v. Northwest Engineering Co.*, 707 F.2d 1310, 1311 (11th Cir. 1983); *Sheldon v. Munford*, 902

F.2d 7, 8-9 (7th Cir. 1990); *Ingersoll-Rand Financial Corp. v. Miller Mining Co.*, 817 F.2d 1424,

1426-27 (9th Cir. 1987); *Delpit v. Commissioner*, 18 F.3d 768, 769, 774 (9th Cir. 1994);

*Commerzanstalt v. Telewide Sys.*, 790 F.2d 206, 207-08 (2d Cir. 1986); *Marcus, Stowell & Beye

Gov't Secs. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230 & n.4 (5th Cir. 1986); *Maritime Electric

Co. v. United Jersey Bank*, 959 F.2d 1194, 1203, 1205-07 (3d Cir. 1991); *Ass'n of St. Croix

Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir. 1982); *In re New

York Stock Exch. Arbitration*, 943 F.2d 249, 250 (2d Cir. 1991); *Borman v. Raymark Industries*,

946 F.2d 1031, 1032, 1036-37 (3d Cir. 1991); *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d

60, 61-62 (6th Cir. 1983); *Farley v. Henson*, 2 F.3d 273, 274-75 (8th Cir. 1993); *In re Tampa

Chain Co.*, 835 F.2d 54, 55 (2d Cir. 1987); *In re Hoffinger Indus.*, 273 B.R. 777, 779-80 (Bankr.

D. Ark. 2002); *Cramer v. Wade*, 985 P.2d 467, 469-70 & n.1 (Alaska 1999); *Taylor v. Barnett

Bank*, 737 So. 2d 1105, 1106 (Fla. Dist. Ct. App. 1998). *But see In re General Associated

Investors Ltd. Pshp.*, 159 B.R. 551, 553-54 (Bankr. D. Ariz. 1993); *Greenspoint Palms, Ltd. v.

Greenspoint Co.*, 795 S.W.2d 219, 220 (Tex. App. 1990); *Southern Bank & Trust Co. v. Harley*,

295 S.C. 423, 425 (1988). The opinion on which Clark Polk primarily relies, *In re Capgro

Leasing Assocs.*, 169 B.R. 305, 310-11 (Bankr. E.D.N.Y. 1994), places great weight on this

substantial legal history, and as a general proposition its conclusion is correct.

Nevertheless, an additional legal issue remains in Chapter 11 cases in which the debtor-

11

in-possession acts in the capacity of a trustee and has not been replaced with a case trustee under § 1104(a) of the Code.[10] 11 U.S.C. § 1107(a). The issue in these cases is whether the debtor-in-possession must always seek modification of the stay to proceed with actions that are otherwise stayed automatically or, alternatively, whether the debtor-in-possession (acting as a trustee) may proceed without a court order by simply waiving the protections of the automatic stay and taking action on behalf of the estate. It is important to note that if scrutinized properly, the long line of case law that some courts, including *Capgro Leasing*, cite as the so-called "majority" position does not actually address this issue; it merely stands for the much broader proposition that a debtor and a creditor are enjoined from continuing any particular lawsuit that is in essence an "action or proceeding against the debtor." The so-called majority position does not even begin to address what happens when the Code bestows upon a debtor all of the rights, power, functions, and duties of a trustee. It is particularly telling that of the so-called majority position cases, five make no reference whatsoever to the chapter of Title 11 under which the bankruptcy was filed, *see Delpit v. Commissioner*, 18 F.3d 768, 769 (9th Cir. 1994); *Marcus, Stowell & Beye Gov't Secs. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230 & n.4 (5th Cir. 1986); *Commerzanstalt v. Telewide Sys.*, 790 F.2d 206, 207 (2d Cir. 1986); *Farley v. Henson*, 2 F.3d 273, 274 (8th Cir. 1993); *Cramer v. Wade*, 985 P.2d 467, 469-70 & n.1 (Alaska 1999); two are in fact Chapter 7 cases, *see In re New York Stock Exch. Arbitration*, 943 F.2d 249, 250 (2d Cir. 1991); *Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 439 (4th Cir. 2004); and two are Chapter 13 cases, *see Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1198, 1203-08 (3d Cir.

---

[10]"In this chapter--(1) 'debtor in possession' means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case . . . ." 11 U.S.C. § 1101(1).

12

1991); *In re Tampa Chain Co.*, 835 F.2d 54, 55 (2d Cir. 1987).[11] Only eight are actually Chapter

11 cases involving a § 1107 debtor-in-possession. *See Cathey v. Johns-Manville Sales Corp.*,

711 F.2d 60, 61 (6th Cir. 1983); *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel*

*Corp.*, 682 F.2d 446, 447 (3d Cir. 1982); *Ingersoll-Rand Financial Corp. v. Miller Mining Co.*,

817 F.2d 1424, 1426 (9th Cir. 1987); *Borman v. Raymark Industries,* 946 F.2d 1031, 1032 (3d

Cir. 1991); *Ellison v. Northwest Engineering Co.*, 707 F.2d 1310, 1311 (11th Cir. 1983); *Sheldon*

*v. Munford*, 902 F.2d 7, 8 (7th Cir. 1990); *In re Hoffinger Indus.*, 273 B.R. 777, 778 (Bankr. D.

Ark. 2002); *Taylor v. Barnett Bank*, 737 So. 2d 1105, 1105 (Fla. Dist. Ct. App. 1998). Even in

these eight Chapter 11 opinions, the language used does not make any mention of a debtor-in-

possession's special rights, powers, and duties under § 1107(a) and Bankruptcy Rule 6009, nor

does it even indicate generally that a debtor in a Chapter 11 case is any different from a debtor in

any other type of case. Consequently, many of the so-called majority position cases do not

discuss whether an estate representative even asserted that the appeal from the creditor's

judgment should proceed without modification of the stay. *See, e.g., St. Croix Hotel Corp.*, 682

F.2d at 447-48; *Byrd*, 357 F.3d at 439; *Ingersoll-Rand*, 817 F.2d at 1426; *Delpit*, 18 F.3d at 769;

*Maritime Electric*, 959 F.2d at 1198, 1203-08; *New York Stock Exch. Arbitration*, 943 F.2d at

250; *Marcus, Stowell & Beye Gov't Secs.*, 797 F.2d at 230 & n.4; *Tampa Chain*, 835 F.2d at 55;

*Cramer*, 985 P.2d at 469-70 & n.1; *Taylor*, 737 So. 2d at 1105. In these cases it was entirely

possible that the debtor-in-possession or trustee viewed the appeal as burdensome to the estate, in

---

[11]Unlike Chapter 11 cases, Chapter 7 and 13 cases feature case and standing trustees, respectively, who are unlike Chapter 11 debtors-in-possession. Chapter 13 debtors do share a few of the features of a Chapter 11 debtor-in-possession by remaining in possession of all property of the estate, *see* 11 U.S.C. § 1306(b); by exercising the authority to use, sell, or lease property of the estate under § 363(b)-(c), *see* §§ 1303 & 1304(b); and by occasionally incurring postpetition business debt under § 364, *see* § 1304(b).

which case the issue of whether an estate representative may continue litigation without a court

order by simply foregoing the protections of the automatic stay and proceeding would not have

arisen. In other cases the issue does not materialize because the debtor-in-possession or trustee

clearly wants the appellate forum to enforce the automatic stay of the appeal of the judgment

against the debtor's estate. *Sheldon v. Munford*, 902 F.2d 7, 8 (7th Cir. 1990); *Teachers Ins. &*

*Annuity Asso v. Butler*, 803 F.2d 61, 62-65 (2d Cir. 1986); *Ellison v. Northwest Engineering Co.*,

707 F.2d 1310, 1311 (11th Cir. 1983); *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 61

(6th Cir. 1983).

When the issue in the instant case is properly understood more specifically as the

interplay between a trustee's role and § 362(a), the case law is much more evenly divided.

*Parker v. Bain (In re Parker)*, 68 F.3d 1131, 1135-38 (9th Cir. 1995); *Simon v. Navon*, 116 F.3d

1, 3-4 (1st Cir. 1997); and *In re Capgro Leasing Assocs.*, 169 B.R. 305, 312-13 (Bankr. E.D.N.Y.

1994), indicate that, specifically, a Chapter 11 debtor-in-possession must obtain a bankruptcy

court order modifying the stay in order to proceed with an appeal from a judgment claim against

the bankruptcy estate; a trustee or debtor-in-possession may not unilaterally waive the stay and

proceed with an appeal (the "*Capgro Leasing*" line). On the other hand, *Chaussee v. Lyngholm*

*(In re Lyngholm)*, 24 F.3d 89, 91-92 (10th Cir. 1994); *Autoskill v. Nat'l Educ. Support Sys.*, 994

F.2d 1476, 1486 (10th Cir. 1993); *In re Cobb*, 88 B.R. 119, 120-21 (Bankr. D. Tex. 1988),[12] *In re*

*Townview Nursing Home*, 28 B.R. 431, 436, 447-48 (Bankr. S.D.N.Y. 1983); and *Carpenter v.*

*Farm Credit Servs.*, 654 N.E.2d 1125, 1127-28 (Ind. 1995), indicate that the debtor-in-possession

---

[12]"While a debtor cannot waive the automatic stay, . . . when the debtor-in-possession appears and defends
a suit on any basis other than application of the automatic stay, then the debtor-in-possession waives the automatic
stay." *In re Cobb*, 88 B.R. 119, 120-121 (Bankr. D. Tex. 1988).

may simply proceed as any trustee would in administering the estate: by waiving the protections

§ 362(a) affords and continuing with the desired action, including the defense of litigation against

the debtor's estate. All the other opinions that supposedly constitute the majority position do not

even purport to address whether the entity acting as trustee in the case must seek relief from stay.

Particularly noteworthy is the fact that *Capgro Leasing*'s reasoning explicitly applies to trustees

in addition to debtors-in-possession, *In re Capgro Leasing Assocs.*, 169 B.R. 305, 313 (Bankr.

E.D.N.Y. 1994), while the other so-called "majority" cases discussed § 362(a)'s effect on debtors

without addressing the special rights, duties, and powers of a trustee as they pertain to a Chapter

11 debtor. Furthermore, in examining *Capgro Leasing*, it is necessary to consider what

implications its reading of the Code would have on Chapter 7 or 11 case trustees as well as on

Chapter 12 and 13 standing trustees and debtors-in-possession.

The analysis of the *Capgro Leasing* line proceeds without giving sufficient consideration

to the text of § 1107(a), and occasionally it uses the words "debtor" and "trustee" as if they are

legally interchangeable, *see, e.g.*, *Capgro Leasing*, 169 B.R. at 311-12 (implying that waiver by a

debtor and by a trustee are the same); *Simon v. Navon*, 116 F.3d 1, 3-4 & n.2 (1st Cir. 1997)

(using "debtor" and "debtor in possession" interchangeably). When the Code allows the Chapter

11 debtor to remain a debtor-in-possession, the "debtor in possession shall have all the rights,

other than the right to compensation under section 330 of this title, and powers, and shall perform

all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this

title, of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a) (emphasis added).

15

Thus, the debtor-in-possession has "all" the rights, powers, functions, and duties of trustee.[13]
*E.g., Autoskill v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1484 & n.4 (10th Cir. 1993).

But, we must then ask what a trustee may or may not generally do in spite of the automatic stay of § 362(a). Section 1107(a) further provides that the debtor-in-possession's standing as a trustee is "[s]ubject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes." § 1107(a). Section 362(a) states that "a petition filed under section 301 . . . operates as a stay, applicable to all entites." § 362(a).

An "entity" has been defined to include a "person, estate, trust, governmental unit, and United States trustee." 11 U.S.C. § 101(15). A bankruptcy trustee is distinguishable from the U.S. trustee. Cases interpreting § 362(h) have held that while a bankruptcy trustee may be an individual, i.e., a natural person, he does not act in that capacity while administering the estate; he instead represents a "thing" that is not a human being or corporation but that is another type of legal entity not included within words such an "individual." *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 192-93 (9th Cir. 1995); *see In re Lickman*, 297 B.R. 162, 194-96 (Bankr. M.D. Fla. 2003); *Rogers v. NationsCredit Financial Services Corp.*, 233 B.R. 98, 106 & n.5 (N.D. Cal. 1999). This rationale easily extends to the issue of whether a bankruptcy trustee is a "person" within the meaning of § 101(15) and requires a negative answer. A bankruptcy trustee is the representative of the "estate" or the "trust" which is the bankruptcy estate defined in § 541(a) and thus could conceivably be considered restrained under § 362(a). In addition to a further problem

---

[13]The exceptions for compensation, investigation, and production of an examiner's report do not bear on any trustee's prerogative to proceed with respect to the automatic stay.

16

identified below, it seems rather curious that the automatic bankruptcy stay would restrain the

very estate it protects in addition to restraining the trusts and estates that may be creditors of or

parties otherwise interested in such bankruptcy estate.  Certainly an interpretation of § 362(a) and

"entity" allowing bankruptcy trustees to proceed in their own cases in spite of the stay has

unfolded over the last 25 years of the Bankruptcy Code.  The ambiguous scope of the general

reference to "trust" and "estate" in § 101(15) requires a construction of the entire Bankruptcy

Code, its policy, and its purpose.

       So far, courts addressing this problem have begun and ended this inquiry with Federal

Rule of Bankruptcy Procedure 6009:

> With or without court approval, the trustee or debtor in possession may prosecute
> or may enter an appearance and defend any pending action or proceeding by or
> against the debtor, or commence and prosecute any action or proceeding in behalf
> of the estate before any tribunal.

Fed. R. Bankr. Pro. 6009; *e.g.*, *Lyngholm*, 24 F.3d at 91-92; *Autoskill v. Nat'l Educ. Support Sys.*,

994 F.2d 1476, 1486 (10th Cir. 1993); *In re Cobb*, 88 B.R. 119, 120-21 (Bankr. D. Tex. 1988);

*In re Townview Nursing Home*, 28 B.R. 431, 447 (Bankr. S.D.N.Y. 1983); *Carpenter v. Farm*

*Credit Servs.*, 654 N.E.2d 1125, 1127-28 (Ind. 1995).  The *Capgro Leasing* line of cases rejects

the proposition that this civil procedure rule provides any kind of exception to the automatic stay;

it merely provides the trustee with authority to unilaterally proceed with nonbankruptcy litigation

if and when such litigation is not stayed under § 362.  *E.g.*, *Parker v. Bain (In re Parker)*, 68 F.3d

1131, 1136 (9th Cir. 1995); *Simon v. Navon*, 116 F.3d 1, 4 (1st Cir. 1997); *see also In re Capgro*

*Leasing Assocs.*, 169 B.R. 305, 311-13 (Bankr. E.D.N.Y. 1994).  *Capgro Leasing* explains how

this bankruptcy rule derives from a predecessor rule, Rule 610, under the Bankruptcy Act of

17

1898, the purpose of which was to modify an older version requiring court approval any time the

trustee desired to intervene in a pending claim against the debtor in a nonbankruptcy forum. *See*

*id.* at 312-13. As such, *Capgro Leasing* harmonizes Bankruptcy Rule 6009 with § 362(a) by

declaring that the Rule 6009 places in the trustee's hands the decision "whether an action in

which the estate has an interest should be commenced, prosecuted or defended," while the

automatic stay places in the bankruptcy court the timing, or *when* the action will proceed. *Id.* at

312-13; *see also Simon v. Navon*, 116 F.3d 1, 4 (1st Cir. 1997). This is a reasonable way to

reconcile the two provisions, but the distinction eventually breaks down. The bankruptcy court

could answer the question of *when* by continually denying trustee motions for relief from stay to

permit the estate's appeal of a claim against it, thereby answering the question "never." Whether

an appeal of a bankruptcy claim will proceed is, therefore, not really left to the trustee's sole

discretion, as intended by former Rule 610. There is at least some degree of conflict between

Bankruptcy Rule 6009 and § 362(a)(1) as interpreted in *Capgro Leasing*.

Bankruptcy Rule 6009 nevertheless fails to provide a *sufficient* authority for declaring

that bankruptcy trustees of any type are not subject to § 362(a) and can waive its protections

while administering the bankruptcy estate (though it may later shed light on how other

Bankruptcy Code provisions are to be read). A more significant problem with *Autoskill*'s use of

Rule 6009 went unidentified in *Capgro Leasing*: To the extent any inconsistency may exist, a

civil-procedure rule promulgated under the Supreme Court's analogous Rules Enabling Act

authority for bankruptcy cases cannot overcome a statutory mandate such as the stay of §

18

362(a).[14] *In re Caldor Corp.*, 303 F.3d 161, 170-71 (2nd Cir. 2002); *In re Jastrem*, 253 F.3d 438,

441-42 (9th Cir. 2001); *In re Searles*, 70 B.R. 266, 271 (D.R.I. 1987). What is true as between

statutes and civil-procedure rules is not necessarily true when interpreting ambiguities within

statutory schemes. We must still read a Bankruptcy Code provision in the context and light of all

others so as to create a unified, coherent picture of the law that is consistent with its policy,

objectives, and schematic design. *See Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431,

2436 (1974); *Apex Oil Company v. U.S.*, 208 F.Supp.2d 642, 656 (E.D. La. 2002). As the

Supreme Court has stated:

> It is a well-established canon of statutory construction that a court should go
> beyond the literal language of a statute if reliance on that language would defeat
> the plain purpose of the statute:
> "The general words used in the clause ···, taken by themselves, and literally
> construed, without regard to the object in view, would seem to sanction the claim
> of the plaintiff. But this mode of expounding a statute has never been adopted by
> any enlightened tribunal-because it is evident that in many cases it would defeat
> the object which the Legislature intended to accomplish. And it is well settled
> that, in interpreting a statute, the court will not look merely to a particular clause
> in which general words may be used, *but will take in connection with it the whole
> statute ··· and the objects and policy of the law····*" *Brown v. Duchesne*, 19 How.
> 183, 194, 15 L.Ed. 595 (1857) (emphasis added).

*Bob Jones University v. U.S.*, 461 U.S. 574, 586, 103 S.Ct. 2017, 2025 (1983). Treating the

ambiguity in § 101(15) to allow case trustees or debtors-in-possession to waive or ignore the

restrictions of the automatic stay does not follow from Bankruptcy Rule 6009 but from the

structure, purpose, and policy of the Bankruptcy Code as a whole. Painted in very broad strokes,

---

[14]

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs,
pleadings, and motions, and the practice and procedure in cases under title 11.
Such rules shall not abridge, enlarge, or modify any substantive right.
. . . .

28 U.S.C. § 2075.

11 U.S.C. § 323 creates the starting point for permitting a trustee or debtor-in-possession to waive the protections and restriction of the automatic stay for the collective benefit of the estate.

> Role and capacity of trustee
> (a) The trustee in a case under this title is the representative of the estate.
> (b) The trustee in a case under this title has capacity to sue and be sued.

11 U.S.C. § 323; *see also In re Cobb*, 88 B.R. 119, 120-21 (Bankr. D. Tex. 1988). Bankruptcy Rule 6009, discussed above, is actually just a more specific civil-procedure rule intended to aid a trustee in carrying out the statutory mandate giving him or her the primary responsibility for administering the debtor's bankruptcy estate through litigation. Specifically in Chapter 11 cases, the debtor-in-possession is charged with "the duties of a trustee specified in sections 704(2) [and] 704(5) . . . of this title," 11 U.S.C. § 1106(a), which includes the duty to "be accountable for all property received" and "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. § 704. The latter duty is an implicit reference to § 502(b), which permits a trustee to seek disallowance of a claim against the debtor's estate because "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Because of doctrines such as claim preclusion, issue preclusion, and *Rooker-Feldman*, a bankruptcy court may try claim objections under this provision only if the underlying claim is subject to dispute but has yet to be decided pursuant to a final judgment from a state or federal court of original jurisdiction. *See In re Fiterman*, 1999 WL 1044811, at *3 (Bankr. D. Minn. 1999); *In re Johnson*, 210 B.R. 1004, 1006 (Bankr. W.D. Tenn. 1997); *cf. Gruntz*, 202 F.3d at 1084 (stating that the three doctrines would apply to prepetition state court judgments); *see also* March & Hildebrandt, *supra*, at 343. Therefore, in order to

20

succeed under § 502(b)(1), the trustee may be required to obtain a successful ruling of reversal or

remand from a court with appellate jurisdiction directly over the final judgment creating the

bankruptcy claim. Not only is the trustee charged with the duty to oppose unenforceable claims,

*see In re KTMA Acquisition Corp.*, 153 B.R. 238, 259-60 (Bankr. D. Minn. 1993), 7 *Collier On*

*Bankruptcy* ¶ 1107.02, at 1107-4 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005),

but he is also generally charged with pursuing any litigation that would enure to the benefit of the

debtor's estate irrespective of whether the stance taken is offensive[15] or defensive, *see id.* ¶

1107.02, at 1107-5. In carrying out these duties, the trustee or debtor-in-possession has a

fiduciary duty to the creditor body. *Wolf v. Weinstein*, 372 U.S. 633, 649-650, 83 S.Ct. 969,979

(1963).

Even though bankruptcy trustees and debtors-in-possession have these special powers and

duties with respect to estate litigation, we must continue to ask whether Congress intended to

constrain their exercise through § 101(15) and § 362(a).[16] As a matter of bankruptcy policy, it is

---

[15]Because debtors-in-possession under Chapters 11, 12, and 13 generally retain possession of estate property, 11 U.S.C. § § 1207(b), 1306(b), they are also considered to be in control of causes of action belonging to the debtor's estate under § 541(a) and, therefore, have the exclusive right under § 323(b) to prosecute nonbankruptcy claims on behalf of the estate. 10 *Collier On Bankruptcy* ¶ 6009.01, at 6009-2, ¶ 6009.03[3], at 6009-6 to -6.1 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005).

[16]The *Capgro Leasing* decision relies on the following statement in the legislative history to support its position:

> [I]t is important that the trustee have an opportunity to inventory the debtor's position before proceeding with the administration of the case. Undoubtedly the court will lift the stay for proceedings before specialized or nongovernmental tribunals to allow those proceedings to come to a conclusion. . . . Nevertheless, it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

*Capgro Leasing*, 169 B.R. at 313 (quoting Sen. Rep. No. 989, 95th Cong., 2d Sess., at 49-50 (1978), H.R. Rep. No. 595, 95th Cong., 1st Sess., at 340-41 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5835, 6296). Even assuming the indefinite statements in legislative history are binding, this passage does not support *Capgro Leasing*'s holding. The

not sensible to find such restraint. Either "entity" should not include the bankruptcy case's own bankruptcy estate within the ambit of the words "estate" and "trust" in § 101(15), or, alternatively, Code sections creating specific trustee duties to be performed as part of the fiduciary duty to creditors should prevail over the more general statutory language in § 362(a), *see, e.g., KTMA Acquisition Corp.*, 153 B.R. at 259-60, which must be read in light of its purpose. It is well-settled that the automatic stay has a dual purpose: it temporarily relieves the debtor of financial hardship and collection activity while simultaneously preventing creditors from improving their positions relative to one another. *Winters by & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133, 135 (4th Cir. 1996); *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982); *Commerzanstalt v. Telewide Sys.*, 790 F.2d 206, 207 (2d Cir. 1986); *Farley v. Henson*, 2 F.3d 273, 274 (8th Cir. 1993); H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97. Thus, "[s]ection 362 is a shield, not a sword." *Winters*, 94 F.3d at 136. The *Capgro Leasing* decision recognizes as much, *see Capgro Leasing*, 169 B.R. at 310, but continues on to state that "[b]ecause the stay is not solely for the debtor's protection, a debtor may neither unilaterally waive nor limit the scope of the automatic stay." *Id.* at 310; *see also Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). While unobjectionable in isolation, this statement

statement is vague in that it does not state who would be required to seek stay relief or why a particular nonbankruptcy proceeding would have been subject to the stay in the first place. For instance, the Court noted earlier the significance of whether the debtor is essentially the plaintiff or the defendant in a state court lawsuit, concluding that the majority position holds that § 362(a)(1) does not even apply in the former situation. Furthermore, the passage does not begin to touch the question of whether a trustee may unilaterally waive the protections of the automatic stay to proceed with acts of estate administration that would otherwise violate § 362(a).

becomes problematic in the Chapter 11 context of this case and in the *Capgro Leasing* case too.
The problem is that a Chapter 11 debtor is not just "a debtor" when granted the powers and
responsibilities of a trustee under § 323; he is a fiduciary for all creditors. Thus, the question is
really whether a *trustee* or *debtor-in-possession* may "unilaterally waive" or "limit the scope of
the automatic stay." *Capgro Leasing*, 169 B.R. at 310.

       Answering in the negative may create several situations that are odd in terms of
bankruptcy policy. The automatic stay is intended to benefit creditors collectively by preventing
individual creditors from acting unilaterally to the detriment of other ones, but this benefit can
only be fully realized if a single entity proceeds to administer the bankruptcy estate by objecting
to and/or appealing improper claims and distributing estate property in accordance with the law.
Staying anyone and everyone who could conceivably fall within § 101(15)'s definition of
"entity" does not get the job done. Section 362(a) exists to enable the trustee or debtor-in-
possession to perform the above estate-administration duties – not to restrain, hinder, or
inconvenience him in those duties. It exists so that a single voice may proceed to represent a
diverse body of interests that have otherwise been enjoined from racing to pursue their own
interests in scattered forums. The legislative history for § 362 indicates that the stay's purpose is
to aid the trustee by allowing him more time to "inventory the debtor's position" and to
"familiarize himself with the various rights and interests involved." H.R. Rep. No. 95-595, at
341 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297-98. The automatic stay, however,
becomes a burden if the trustee or debtor-in-possession must file motions for stay relief under §
362(d). The "shield" aspect of the stay is intended to protect both the debtor and the estate, as
mentioned, but not necessarily to protect individual creditor-appellees with interests adverse to

23

the estate and its representative. A common, intended use of the stay would be for a debtor-in-possession to choose to assert the stay against a creditor whose prepetition judgment was pending on appeal. Such was the case in *Sheldon v. Munford*, 902 F.2d 7, 8 (7th Cir. 1990), a so-called "majority" position case, as there was no indication that the debtor-in-possession saw an immediate benefit to the estate by continuing the appeal after filing for Chapter 11 relief. *See also Ellison v. Northwest Engineering Co.*, 707 F.2d 1310, 1311 (11th Cir. 1983); *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 61 (6th Cir. 1983); *cf. Teachers Ins. & Annuity Asso v. Butler*, 803 F.2d 61, 62-65 (2d Cir. 1986).[17] But when a trustee or debtor-in-possession proceeds with activities that would otherwise be a violation of § 362(a), the story changes. For example, when a joint tenant of the bankruptcy estate's stock shares argued that the debtor-in-possession violated the automatic stay by causing the tenant and the estate to agree to pledge the stock as postpetition security, the Fourth Circuit held that the joint tenant had no standing to use the stay "'as a weapon against the estate'" for the purpose of voiding a contract benefitting the estate. *Winters by & Through McMahon v. George Mason Bank*, 94 F.3d 130, 135-36 (4th Cir. 1996) (quoting *In re Globe Investment & Loan Co.*, 867 F.2d 556, 560 (9th Cir. 1989)). And so it is here. The stay does not exist to protect individual creditor-appellees such as Clark Polk from appeals of bankruptcy claims that could enure to the benefit of the bankruptcy estate; it exists to protect the bankruptcy estate from appeals the trustee deems to be not worth the estate's

---

[17]In *Butler*, the debtor-in-possession filed a postpetition notice of appeal without stay modification but then motioned the Second Circuit to recognize the stay of such appeal pursuant to § 362(a), which request the court obliged. *Teachers Ins. & Annuity Asso v. Butler*, 803 F.2d 61, 62-65 (2d Cir. 1986). The court failed to separately discuss the legality of the postpetition notice of appeal itself.

resources.[18]  It is questionable whether individual creditors have statutory standing to assert the

automatic stay against a bankruptcy trustee or debtor-in-possession. Here, Clark Polk requests

that the debtor's estate be required to pay as damages its attorneys' fees incurred in persuading

the Appellate Court of Illinois to dismiss the appeal as a stay violation. Because the automatic

stay exists to protect the bankruptcy estate, it would seem odd that the estate must pay for its own

alleged stay violation if and when such violation does not harm the estate. Stated another way,

Clark Polk has proceeded as though the automatic stay exists to protect it individually and not to

protect the creditor body and the debtor generally. In any bankruptcy case, the creditors have an

aggregate interest in reducing claims against the bankruptcy estate as a way to increase their

chances of receiving greater dividends on their claims. In order to accomplish this, the trustee (or

debtor-in-possession) must object to claims that are unenforceable under nonbankruptcy law and,

for the reasons stated above, must appeal those adverse judgments in the proper appellate forum

rather than relitigating them in bankruptcy court. It would therefore be anomalous for the

---

[18]The *Capgro Leasing* line relies on authority contending as follows:

> Because it is the bankruptcy judge who is the most knowledgeable about the debtor's affairs, and
> about the effect that any judicial proceeding would have on the debtor's reorganization, *it is
> essential that he make the determination as to whether an action against the debtor may proceed
> or whether the stay against such actions should remain in effect. Assoc. of St. Croix Cond.
> Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982) (emphasis ours).

*Capgro Leasing,* 169 B.R. at 313 (quoting *St. Croix Hotel Corp.,* 682 F.2d at 448). This court believes it
misinformed to assert that as a general proposition, bankruptcy judges know more about the affairs and litigation of a
debtor than does a debtor-in-possession itself, at least if represented by competent counsel. In normal Chapter 11
cases, a debtor-in-possession will periodically bring a few motions and a status report before the Court, both of
which summarize the debtor's operations, background, and pending litigation in a few paragraphs. While these
summaries reveal the most crucial information and are usually quite informative, they pale in comparison to the
volumes of financial, factual, and legal information that debtor-in-possession's and their attorneys must absorb on a
daily or weekly basis in the course of negotiating with creditors, conducting discovery on potential causes of action
or defenses thereto, evaluating leases and executory contracts, drafting a plan, and reviewing budgets. Chapter 11
debtors-in-possession are normally better situated to *initially* determine the merits of both bankruptcy and
nonbankruptcy litigation, including appeals from prepetition judgments against the debtor's estate.

bankruptcy estate to be required to pay the attorneys' fees for the dismissal of an appeal that may
have been in the estate's best interests, especially under a law that was designed to protect the
estate as a whole from individual creditor-appellees rather than vice versa. As the Indiana
Supreme Court stated, "Dismissing [the] appeal does nothing to further 'the policy behind the
[Bankruptcy Code], which is to protect the bankrupt's estate from being eaten away by creditor's
lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets
and distribute them equitably among the creditors.'" *Carpenter v. Farm Credit Servs.*, 654
N.E.2d 1125, 1128 (Ind. 1995) (quoting *Martin-Trigona*, 892 F.2d at 577). Rather, dismissing
the appeal because of § 362(a)(1) may result in the estate being eaten away by a judgment that
should have been vacated on appeal, and this being so after the representative of the bankruptcy
estate has had time to evaluate the merits of the particular creditor's lawsuit.

 All of these policy problems are related to a much larger practical dilemma created by the
*Capgro Leasing* interpretation. The *Capgro Leasing* line does not fully consider what applying
the automatic stay to trustees would really entail; it does not carry its reasoning to its logical
conclusion. The language of the eight subsections of § 362(a) describing different categories of
automatically stayed activities contains no basis for concluding that trustees are subject to some
of the subsections but not others. Under the *Capgro Leasing* interpretation, trustees or debtors-
in-possession would have to be subject to all eight forms of the stay, not just the one in §
362(a)(1). Section 362(a)(3) is particularly telling: "[A] petition filed under section 301, 302, or
303 of this title . . . operates as a stay, applicable to all entities, of . . . (3) any act to obtain
possession of property of the estate or of property from the estate or to exercise control over
property of the estate . . . ." 11 U.S.C. § 362(a)(3). If *Capgro Leasing* is correct, then a trustee

26

under any chapter could be held in contempt of court unless he applied for stay modification

under § 362(d) just to proceed with liquidating or reorganizing the bankruptcy estate.

Specifically, a Chapter 7 trustee would have to request stay modification to sell a piece of real

property and distribute the proceeds pro rata, for surely that would constitute exercising control

over estate property. A Chapter 13 trustee would be required to apply for modification in

thousands of cases just to collect monthly payments of disposable income and forward them to

creditors. A typical Chapter 11 debtor selling goods and inventory would *immediately* require

stay relief upon filing the Chapter 11 petition, otherwise the selling of inventory, the collecting of

accounts receivable, the purchase of new inventory, and the payment of labor and management

would all constitute unauthorized exercises of control over estate property.[19] This opinion noted

earlier how federal courts hold that prepetition suits involving a debtor as a plaintiff are not

stayed pursuant § 362(a)(1).[20] The end result in all those cases would be called into doubt

because § 362(a)(3) would prohibit the trustee or debtor-in-possession from prosecuting the suit,

which would be a form of exercising control over estate property. If the *Capgro Leasing*

interpretation is carried to its logical conclusion, it produces absurd results and, indeed, could

cause a nationwide bankruptcy revolution. And this conclusion is not as overstated as it might

---

[19]Of course, these acts are generally authorized under other sections of the Code, *see* 11 U.S.C. § § 363(c), 1107(a), 1108, but they are not authorized as specific exceptions to § 362(a)(3), *see* 11 U.S.C. § 362(b). So if *Capgro Leasing* is correct, sections 363(c) and 1108 should not be automatic stay exceptions any more than § 323, § 704(5), and Bankruptcy Rule 6009, which, as mentioned earlier, facially appears to authorize trustees and debtors-in-possession to proceed with estate litigation in nonbankruptcy forums without obtaining any type of bankruptcy court approval. *Capgro Leasing* makes the distinction that other bankruptcy provisions determine *whether* the trustee may engage in a particular activity, while § 362(a) and (d) lays in the bankruptcy court's hands the *timing* of when those activities will occur.

[20]*Aiello v. Providian Financial Corp.*, 239 F.3d 876, 880 (7th Cir. 2001); *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002); *Martin-Trigona v. Champion Federal Sav. and Loan Ass'n*, 892 F.2d 575, 577-78 (7th Cir. 1989); *Carley Capital Group v. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C. Cir. 1989).

first appear. The vast weight of authority holds that legal actions violating the automatic stay are null and void *ab initio*. *E.g., Kalb v. Feurstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Raymark Industries v. Lai*, 973 F.2d 1125, 1131-32 (3d Cir. 1992); *Parker*, 68 F.3d at 1138; *48th Street Steakhouse v. Rockefeller Group, Inc. (In re 48th Street Steakhouse)*, 835 F.2d 427, 431 (2d Cir. 1987); *Maritime Electric Co.*, 959 F.2d at 1203, 1206-07; *Phoenix Bond & Indem. Co. v. Shamblin (In re Shamblin)*, 890 F.2d 123, 125-26 (9th Cir.1989); *Hoffinger Indus.*, 273 B.R. at 781; *Capgro Leasing*, 169 B.R. at 313, 318; *In re Benalcazar*, 283 B.R. 514, 521 (Bankr. N.D. Ill. 2002); March & Hildebrandt, *supra*, at 341. *Contra Singleton v. Abusaad (In re Abusaad)*, 309 B.R. 895, 897-899 (Bankr. D. Tex. 2004).

Additionally, § 362(a)(6) prohibits "all entities" from engaging in "<u>any</u> act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6) (emphasis added). Again, if the automatic stay is generally applicable to trustees as *Capgro Leasing* contends, then the entire bankruptcy process – including the collection and distribution of estate property otherwise belonging to the debtor as well as the opposition to discharge – could be construed as "<u>any</u> act to . . . recover a claim against the debtor." In a nutshell, here is the problem: Why would § 704(2) and (6) provide specific enough authority for a trustee or debtor-in-possession to circumvent § 362(a)(3) and (6), respectively, while § 704(5) would not provide specific enough authority for the same estate representatives to ignore § 362(a)(1) in the process of opposing and eliminating unenforceable claims against the debtor's estate. Additionally, it is not at all clear why a trustee or debtor-in-possession, upon assessing all nonbankruptcy litigation having any effect upon the bankruptcy estate, can proceed <u>without</u> any input from the bankruptcy court when the debtor was originally

28

the plaintiff, *see also supra* note 9, but can only proceed <u>with</u> the same court's blessing and expertise when the debtor was originally the defendant.

We should avoid applying the various subsections of § 362(a) to trustees and debtors-in-possession in a random manner. The better interpretation of the Bankruptcy Code holds that an automatically stayed "trust" or "estate" under § 101(15) includes neither the bankruptcy estate itself nor the trustee who administers it. Alternatively, one could use the following rule to reach the same result: When Congress uses another section of the Code to authorize the trustee to perform specific functions that would otherwise violate § 362(a), *e.g.*, § 323, § 363(c), § 365, § 704, § 1106, § 1108, then § 362(a) implicitly does not apply to those activities.[21] Bankruptcy Rule 6009, quoted and discussed earlier, bolsters this reading of the Code. Finally, one can reach the same result in this case by holding that individual creditors of a bankruptcy estate do not have statutory standing to assert the stay against the entity acting as the trustee (and thereby representing creditors generally) in the same bankruptcy case. That is, when Congress created a "zone of interests" by writing § 362 of the Code, it did not intend that individual creditors could use the automatic stay as a sword against the trustee charged with a fiduciary duty in the same bankruptcy case. *See generally Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97, 118 S.Ct. 1003, 1013 (1998); *National Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 488, 118 S.Ct. 927, 933 (1998). In any event, Clark Polk may not recover attorneys' fees against the debtor-in-possession because Mid-City did not violate § 362(a) in the first

---

[21]From time to time, the Seventh Circuit has recognized unenumerated, implicit exceptions to § 362(a) in order to give effect to other Code provisions, including "[t]he right to seek reaffirmation." *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 879 (7th Cir. 2001); *see also* 11 U.S.C. § 524(c); *cf. Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 573-74 (9th Cir. 1992) (recognizing implicit automatic stay exception under § 549 for voluntary, postpetition "sales or transfers of property initiated by the debtor").

instance; the debtor-in-possession had the authority to unilaterally proceed with estate administration by filing the notice of appeal in the Appellate Court of Illinois notwithstanding the automatic stay.

Finally, one should note that once a trustee or debtor-in-possession unilaterally waives the protections of the automatic stay by proceeding with estate administration, he cannot contend that a creditor-appellee has violated the automatic stay by opposing an appeal he himself has filed and prosecuted, though different theories of why this is true are possible. If the trustee has waived the protections of the automatic stay, it would logically no longer exist to restrain the creditor-appellee. Also, from an equitable standpoint, one court has held that the debtor-in-possession is estopped from asserting the stay against a creditor-appellee once it has initiated an appeal in spite of § 362(a). *In re Horkins*, 153 B.R. 793, 799 (Bankr. D. Tenn. 1992); *cf. In re Cobb*, 88 B.R. 119, 121 (Bankr. D. Tex. 1988).

## CONCLUSION

A Chapter 11 debtor-in-possession or other entity holding the authority of a case trustee may waive the protections afforded by subsections (1), (3), and (6) of § 362(a) when the actions that would otherwise violate those subsections are in furtherance of its statutory duties of administering the bankruptcy estate, including the appeal of judgments against the debtor's estate in nonbankruptcy forums.[22]  In so holding, this Court approves the result reached by the U.S. Court of Appeals for the Tenth Circuit and the Indiana Supreme Court rather than that reached by the First Circuit and the Ninth Circuit. Until a debtor-in-possession or trustee takes affirmative

---

[22]The Court notes, but need not reach, the issue of whether a Chapter 13 debtor-in-possession has such authority in addition to a Chapter 13 standing trustee.

action showing an intent to prosecute the appeal of such a judgment claim, however, an appeal
from a judgment against the debtor's estate by any other party is stayed pursuant to § 362(a)(1).

Here, the Chapter 11 debtor-in-possession took affirmative action by filing a notice of
appeal in the Appellate Court of Illinois, thereby waiving the protections of § 362(a)(1) on behalf
of the bankruptcy estate. Because no automatic stay violation occurred, Clark Polk's "Motion for
Costs and Fees Incurred as a Result of Mid-City Parking Inc.'s Willful Violation of the
Automatic Stay" is denied.

This opinion constitutes findings of fact and conclusions of law under Bankruptcy Rule
7052. A separate order consistent with the opinion will be entered in compliance with
Bankruptcy Rule 9021.

Date:    September 29, 2005                    ENTERED: _Jacqueline P. Cox_
                                                       J. P. Cox
                                              _____
                                              Jacqueline P. Cox
                                              United States Bankruptcy Judge